## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RICHARD M. DAUVAL, Trustee
for the Estate of Joseph Pietro,
an individual,

       Plaintiff,

                                Case No.: 8:11-cv-02269-JDW-TGW

v.

PREFERRED COLLECTION AND
MANAGEMENT SERVICES, INC.,
a Florida corporation,

       Defendant.

_____ /

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

       **COMES NOW** Plaintiff, RICHARD DAUVAL (hereinafter, "Plaintiff"), as Trustee for

the Estate of Joseph Pietro (hereinafter, "Pietro"), by and through the undersigned counsel, and

pursuant Rule 56, Fed. R. Civ. P., and hereby files this Plaintiff's Motion for Summary Judgment

and Incorporated Memorandum of Law and in support states as follows:

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

       1.      Pietro filed a Chapter 7 bankruptcy petition on March 15, 2011.  *Complaint*, Dkt.

No. 1 at ¶ 3; *Answer*, Dkt. No. 7 at ¶ 3. This cause of action is an unliquidated, non-exempt asset

of Pietro's bankruptcy estate.  *Complaint*, Dkt. No. 1 at ¶ 3.

       2.      Plaintiff is the Chapter 7 bankruptcy trustee for the bankruptcy Estate of Pietro.

*Complaint*, Dkt. No. 1 at ¶ 3; *Answer*, Dkt. No. 7 at ¶ 3.

       3.      This cause of action generally arises from a debt collection letter (hereinafter, "the

Letter") sent to Pietro by Preferred Collection and Management Services, Inc. (hereinafter,

"Defendant" or "PCMS"). *Complaint*, Dkt. No. 1 at ¶¶ 14-15; *Answer*, Dkt. No. 7 at ¶ 14. A true and correct copy of the Letter is attached to the Complaint and labeled as Exhibit "A." A true and correct copy of the Letter is also attached to this Motion labeled as Exhibit "A."

4.    Plaintiff filed an Application to Employ Special Counsel in Pietro's Chapter 7 bankruptcy case on June 21, 2011 in order to employ Leavengood, Nash, Dauval & Boyle, P.A. (hereinafter, "Undersigned Counsel") to pursue claims against PCMS. A true and correct copy of the Application to Employ Special Counsel is attached to this Motion as Exhibit "B."

5.    The United States Bankruptcy Court for the Middle District of Florida, Tampa Division, entered an Order Approving Trustee's Application to Employ Special Counsel on June 21, 2011. A true and correct copy of the Order Approving Application to Employ is attached to this Motion as Exhibit "C."

6.    Plaintiff filed the subject Complaint in this Court on or about October 6, 2011. *See Complaint*, Dkt. 1.

7.    The Complaint raises four claims against PCMS. Count I is an action for violation of the Fair Debt Collection Practices Act (hereinafter, the "FDCPA"). Count II is an action for violation of the Credit Repair Organizations Act (hereinafter, the "CROA"). Count III is an action for violation of the Florida Consumer Collection Practices Act (hereinafter, the "FCCPA"). Count IV is a request for declaratory and injunctive relief. *See, generally,* Complaint, Dkt. 1.

8.    Defendant moved to dismiss Count I of the Complaint based on the one year limitation period set forth in 15 U.S.C. § 1692k(d). *See Motion to Dismiss*, Dkt. 6. Defendant also filed its Answer and raised certain Affirmative Defenses related to the remainder of Plaintiff's claims on November 4, 2011. *See Answer*, Dkt. 7.

9. Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss, generally asserting that the one-year limitation period imposed by 15 U.S.C. § 1692k(d) was extended two years from the date of the bankruptcy filing, by operation of law, pursuant to 11 U.S.C. § 108(a)(2). *See* Dkt. 12.

10. This Court entered an Order Denying Defendant's Motion to Dismiss Count I on December 20, 2011. *See* Dkt. 13.

11. Defendant subsequently filed its Answer and Affirmative Defenses to Count I on January 3, 2012. *See* Dkt. 14.

12. On January 19, 2012, this Court entered the Case Management and Scheduling Order, providing the deadline for dispositive motions as August 31, 2012. *See* Dkt. 16.

13. This Court entered an Endorsed Order granting Plaintiff's Unopposed Motion for Extension of Time, which extended the dispositive motion deadline to September 7, 2012. *See* Dkt. No. 22.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

14. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55. *Complaint*, Dkt. No. 1 at ¶¶ 6-7; *Answer*, Dkt. No. 7 at ¶¶ 6-7.

15. Defendant attempted to collect a debt, specifically a medical bill, from Pietro (hereinafter, "the Debt"). *Complaint*, Dkt. No. 1 at ¶ 8; *Answer*, Dkt. No. 7 at ¶ 8.

16. The Debt was a consumer debt, incurred primarily for personal, household, or family use. *Complaint*, Dkt. No. 1 at ¶ 9; *Answer*, Dkt. No. 7 at ¶ 9.

17. Defendant attempted to collect the Debt with the Letter, sent to Pietro on or about May 18, 2010. *Complaint*, Dkt. 1, ¶ 14; *Answer*, Dkt. 7, 14, ¶ 14.

III.     **LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986).  The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the movant succeeds, the non-movant must come forward with evidence such that a reasonable party could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the non-movant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).  Summary judgment is proper if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*,477 U.S. at 322-23; *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).  Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory,

unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the non-movant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Nor are pleadings competent summary judgment evidence. *Little,* 37 F.3d at 1075; *Wallace v. Texas Tech. U.*, 80 F.3d 1042, 1045 (5th Cir. 1996).

A district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion. *Chevron Phillips*, 570 F.3d 606, 612 n.3 (5th Cir. 2009), *citing EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999). Nor does the court have to sift through the record in search of evidence to support opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## IV.     MEMORANDUM OF LAW

### A.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO EACH OF ITS CLAIMS

Plaintiff's Complaint asserts violations of the CROA (Count II), the FCCPA (Count III), and the FDCPA (Count I). Based on violations of the FCCPA, Plaintiff also seeks declaratory and injunctive relief (Count IV). Because the violations of the CROA, FCCPA, and FDCPA all arise from the Letter, the factual basis for each of Plaintiff's claims is collectively discussed in Section IV. A. 1., below.

#### 1.     FACTUAL DISCUSSION SUPPORTING ALL CLAIMS

All of Plaintiff's claims arise from the Letter. Generally, the Letter was an attempt to collect the underlying consumer debt from Pietro. To induce Pietro to make payment, Defendant offered to cause Pietro's credit to be "restored." This offer was inherently deceptive, false and unlawful. Defendant has violated the CROA, FCCPA and FDCPA.

## a.    GENERAL DISCUSSION OF THE LETTER

The Letter generally consists of three components.  The top third of the Letter contains Pietro's mailing address and a description of the Debt, including the medical provider, the amount owed, and identifying account numbers.  *See* Exhibit "A."   The bottom third of the Letter is a payment voucher to be mailed to Defendant with payment in the form of check or credit card.   The middle third of the Letter contains the substantive communication from Defendant to Pietro.  This portion contains the following communication:

### CREDIT BUREAU NOTICE

A review of our collection records indicates that your account has been reported to credit reporting agencies.  Restoring your valuable credit is certainly important to you.

Act today by contacting our office to resolve this outstanding debt and restore your credit by having us inform the credit reporting agencies of your positive action.  I trust you will take advantage of this invitation and immediately contact our office.

Sincerely,
MR ULMERTON-EXT 299
(813) 251-0802

This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

*See* Exhibit "A."

## b.    THE LETTER WAS AN ATTEMPT TO COLLECT A CONSUMER DEBT

It is clear that the Letter was an attempt to collect a consumer debt.  This fact can be readily observed from the language of the Letter, which bluntly states, "This is an attempt to collect a debt."  *See also, Answer,* Dkt. 7, ¶ 8.  Moreover, this point was conceded by Defendant in the deposition of its corporate representative, Mr. Chris Lowery.

Q. And this may be stating the obvious, but just for the part of having it on the record, was the purpose of this letter to collect a consumer debt?

A. Yes.

*See* Dkt. 23, Page 75, Lines 6-9. Mr. Lowery also conceded that the intention of the Letter was to induce payment through the promise of making a positive report to the credit bureau.

Q. And is Preferred's hope or intention with this letter that the promise of informing the credit bureau of a positive action would induce payment on the part of the patient?

A. Yes.

*See* Dkt. 23, Page 76, Lines 15-19.

<b>c.      <u>IN THE LETTER, DEFENDANT REPRESENTED IT COULD CAUSE PIETRO'S CREDIT TO BE "RESTORED"</u></b>

In the four sentences contained in the message portion of the Letter, Defendant twice suggests that it could cause Pietro's credit to be restored. In the second sentence, Defendant states, "***Restoring*** your valuable credit is certainly important to you." (Emphasis added). In the next sentence, Defendant states, "Act today by contacting our office to resolve this outstanding debt and ***restore*** your credit by having us inform the credit reporting agencies of your positive action." (Emphasis added). *See* Exhibit "A."

Through this language, Defendant represented to Pietro that if he contacted Defendant to make payment on the Debt, Defendant would cause his credit to be restored. Defendant conceded in the deposition of its corporate representative that the "positive action" described in the third sentence specifically referred to a payment being made, affecting the balance due. Mr. Lowery explained,

Q. Let's skip then to the last part of this sentence, "by having us inform the credit reporting agencies of your positive action." What does positive action mean?

A. Anything positive that affects their balance.

Q. Anything positive to –

A. Affect the balance.

Q. And by balance, you mean the amount due?

A. The amount due, correct.

*See* Dkt. 23, Page 63, Lines 2-10.

Thus, upon Pietro making a payment affecting the balance due, Defendant promised to contact the "credit reporting agencies"[1] and inform them of Pietro's payment. Defendant represented that this action would result in Pietro's credit being "restored." In Mr. Lowery's deposition, Defendant also clarified that credit "restored" did in fact mean that the credit would be "moved to its prior place." Mr. Lowery testified,

> Q. All right. The next part of the sentence that you read says –
> after "outstanding debt" it says, "and restore your credit." Id' like
> to focus on those words now, "and restore your credit."

> A. Okay.

> Q. In that sentence, what does Preferred mean by the word "restore?"

> A. To move to a prior place.

*See* Dkt. 23, Page 59, Lines 6-13.

### d. THE LETTER WAS INHERENTLY FALSE, DECEPTIVE AND UNLAWFUL

It is clear that Defendant did not have the intention or the ability to "move" Pietro's credit to its "prior place." In Mr. Chris Lowery's deposition, Defendant conceded Defendant is unable to quantify how payments made would translate into a restoration of credit. Mr. Lowery stated,

---

[1] While Defendant does not specify which "credit reporting agencies" it contemplated, it is important to note that it had no intention of contacting TransUnion. *See* Dkt. 23, Page 38, Lines 4-6. This omission is material to the extent any recipient expected their TransUnion credit score to be positively affected by the actions of Defendant.

> Q. Is preferred able to quantify how any specific positive action will impact the patient's credit?
>
> A. No.

*See* Dkt. 23, Page 66, Lines 20-22.

Similarly, Mr. Lowery also stated that Defendant was unable to identify to which "prior place" the patient's credit would be restored.

> Q. Credit refers in this sentence to the credit existing on the date of the letter and that it would be restored to a time prior to the letter. My question is simply, is Preferred able to quantify or precisely answer the question of at which point prior the credit would be restored to?
>
> A. No.

*See* Dkt. 23, Page 80, Lines 5-11.

It is understandable that Defendant is unable to quantify the impact of payments on a patient's credit, and that Defendant does not know to what extent a patient's credit could be "restored." Mr. Lowery explained that Defendant does not have any information on the existing credit of their collection targets.

> Q. Does Preferred ever collect information on a patient's credit score?
>
> A. No.

*See* Dkt. 23, Page 66, Lines 23-25.

This is specifically true as to Pietro.

> Q. Do you personally or do you believe anyone at Preferred has ever had any knowledge or understanding as to what Mr. Pietro's credit score was at any point?
>
> A. No.

*See* Dkt. 23, Page 78, Lines 6-9.

It is also logical that Defendant is unable to quantify the impact of payments on a patient's credit, in light of the fact that the patient's credit may be simultaneously affected by factors and influences outside of Defendant's knowledge or control. This point was conceded by Defendant in Mr. Lowery's deposition.

> Q. My question is, if a patient took a positive action and it caused their credit to be restored, is it also possible that they would simultaneously be having negative actions occurring with other creditors?
>
> A. Yes.
>
> Q. Is it possible that those negative actions would outweigh the positive action with respect to that patient's overall credit?
>
> A. Yes.

*See* Dkt. 23, Page 68, Lines 12-17; Page 69, Lines 5-8.

By Defendant's own admission, it did not have any information concerning the present credit condition of the recipients of the Letter. Moreover, it had no information concerning other events that could have simultaneously affected the recipients' credit. In light of these facts, Defendant concedes that it was unable to quantify the affect of a payment on a recipient's cumulative credit and that it was unable to estimate to what extent his or her credit could have been "restored." Notwithstanding these facts, Defendant sent the Letter in an attempt to induce payment with the promise of "restoring" the credit of anyone who made such a payment. This promise was overtly false in light of Defendant's admissions that it did not know how such payments would affect the payor's credit. To the contrary, it is apparent that Defendant had no way of knowing how the payments it solicited would affect the credit of any particular collection target.

Defendant's representations in the Letter would have been false and misleading even if Defendant only vaguely offered to cause a payor's credit to improve rather than to be fully restored. As conceded by Defendant, it was plausible that after making the proposed payment, a recipient of the Letter would have no improvement in their credit, or that the net effect of all factors would cause their credit to worsen. The fact that Defendant was unable even to predict when a payor's credit would improve or worsen after a payment was made underscores the mendacity of its specific offer to cause credit to be "restored."

2. **LEGAL DISCUSSION OF CLAIMS**

a. **APPLYING THE FOREGOING FACTUAL DISCUSSION TO THE CROA, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT II OF THE COMPLAINT**

Count II of the Complaint asserts violations of the Credit Repair Organizations Act. Specifically, Plaintiff asserts that Defendant, through the Letter, has subjected itself to the CROA by representing to Pietro that it could cause his credit record to be restored in return for payment of the debt. Because the representations in the Letter regarding Pietro's credit were false, misleading, and deceptive, Defendant has violated § 1679b(a)(3) of the CROA. § 1679b(a)(3) prohibits any person from making or using any untrue or misleading representation of the services of a credit repair organization. *Id.*

To establish that Defendant operated as a credit repair organization within the meaning of the CROA, Plaintiff must show that PCMS (1) used any instrumentality of interstate commerce, or the mails, to (2) sell, provide, or perform (or represent that they could do so) (3) in return for valuable consideration (4) services or advice about services (5) for the express or implied purpose of improving a consumer's credit record, credit history or credit rating. *Federal Trade Commission v. RCA Credit Services,* LLC, 727 F. Supp. 2d 1320, 1332 (M.D. Fla. 2010).

Applying these elements to the instant case, it is clear that Defendant has subjected itself to the CROA. It is undisputed that the Letter was sent to Pietro by United States mail. *See Complaint*, Dkt. 1, ¶ 14; *Answer*, Dkt. 7, 14, ¶ 14. Further, as explained above, through the Letter, Defendant represented that in exchange for payment, it would provide a service for the purpose of improving Pietro's credit. *See* Exhibit "A."

Specifically, Defendant conceded that the "positive action" it requested Pietro to take was making a payment "affecting the balance due." *See* Dkt. 23, Page 63, Lines 2-10. With the purpose of inducing such payment, Defendant offered to provide the service of contacting the credit bureaus and reporting the "positive action." *See* Dkt. 23, Page 76, Lines 15-19. Defendant represented that these steps would cause Pietro's credit to be "restored" or "moved to its prior place." *See* Dkt. 23, Page 59, Lines 6-13. As set forth above, these assertions were false and deceptive in light of Defendant's admission that it was unable to quantify or estimate the impact a payment would have had on Pietro's credit.

The issue of whether the CROA could apply to a debt collector offering to improve credit as an inducement for payment was examined in *Bigalke v. Creditrust Corporation*, 162 F. Supp. 2d 996 (E.D. Ill. 2001). In this case, the defendant engaged in the business of purchasing delinquent debts at a discount and then collecting from the debtors. *Id.* at 996-7. In one letter, the defendant stated in part, "Creditrust is prepared to report your account to the credit bureau as satisfied in full, once you complete any of the payment options below." *Id.* at 997. As a result of this letter, the plaintiff brought claims against the defendant under the FDCPA and the CROA. *Id.*

The defendant moved to dismiss, asserting that the plaintiff failed to show facts that the defendant was a credit repair organization. *Id.* Upon analyzing the application of CROA, the

court disagreed, finding that a cause of action under the CROA was viable against the defendant.

*Id.* at 998. The court also noted that even if the court held that the defendant was not a credit repair organization within the meaning of the CROA, the provisions of 15 U.S.C. §1679b(a) (the same provision under which Pietro's CROA claims were brought) was broad enough to apply to persons other than a credit repair organization. 15 U.S.C. §1679(b)(a)(3) states:

> [N]o person may – (3) make or use any untrue or misleading representation of the services of the credit repair organization; or (4) engage, directly or indirectly, in any act, practice or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

*Id.* at 999. The Court concluded that because the plaintiff alleged the defendant violated 1679b(a)(3) and (4), the plaintiff had adequately stated a cause of action under the CROA even if the defendant was not a credit repair organization. *Id.*

Under the plain language of the CROA, and following the analysis used by *Bigalke*, it is apparent that Defendant acted as a credit repair organization. Alternatively, Defendant is subject to the CROA by virtue of its false and misleading statements concerning the credit services it offered. No material facts demonstrating Defendant's liability under the CROA are disputed. Defendant sent the Letter to Pietro, and as described above, the Letter's plain language violates the CROA. Unlike the FDCPA and the FCCPA, the CROA does not provide for statutory damages. Moreover, Plaintiff does not seek an award of actual damages under the CROA. However, the CROA does provide for an award of attorneys' fees to a prevailing plaintiff. *See* 15 U.S.C. § 1679g(a)(3). Accordingly, summary judgment should be granted in favor of Plaintiff as to Count II, and judgment should be entered entitling Plaintiff to an award of attorneys' fees.

**b.** **APPLYING THE FOREGOING FACTUAL DISCUSSION TO THE FCCPA, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT III OF THE COMPLAINT**

Count III of the Complaint asserts violations of the Florida Consumer Collection Practices Act.[2] "When viewed *in toto*…the purpose and intent of the FCCPA is to eliminate abusive and harassing tactics in the collection of debts." *Trent v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007). Specifically, Plaintiff asserts that Defendant, through the Letter, has subjected itself to the FCCPA by attempting to collect the Debt from Pietro by asserting the existence of a legal right with the knowledge that such right does not exist. *See* Fla. Stat. § 559.72(9). This provision "requires actual knowledge of the impropriety or overreach of a claim." *Bacelli v. MFB, Inc.*, 729 F. Supp. 2d 1328, 1333 (M.D. Fla. 2010) (quoting *In re Cooper*, 253 B.R. 286 (Bankr. N.D. Fla. 2000) (citing *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000)).

With respect to determining what constitutes misrepresentation of a legal right under Section 559.72(9), the court "must refer to other statutes that…define legal rights." *Gaalswyk-Knetzke v. Receivables Mgmt. Servs. Corp.*, 2008 U.S. Dist. LEXIS 44152 (M.D. Fla. May 27, 2008). As discussed, *supra,* PCMS subjected itself to the CROA and qualifies as a credit repair organization for the purpose of that statute. For that reason, the court should refer to the CROA in determining whether PCMS asserted a legal right that doesn't exist. Defendant violated the CROA through false and deceptive representations. Defendant also unlawfully held itself out as a credit repair organization when it was not one. *See*, Dkt. 23, Page 16, Lines 23-25; Page 17,

---

[2] § 599.77(5) of the FCCPA provides, "[i]n applying and construing this Section, due consideration and great weight shall be given to the intepretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."

Lines 1-2 (wherein Defendant stated, "[PCMS is] not a credit repair organization."). This serves as a predicate wrong for a violation of the FCCPA.

PCMS falsely asserted it had rights that did not exist in two ways. First, PCMS asserted it had the right and ability to restore Pietro's credit by accepting payment on the Debt. PCMS actually did not have either the right or ability to do so. As discussed, *supra,* Defendant affirmatively knew that it was unable to restore Pietro's credit. Moreoever, Defendant concedes it was not a registered credit repair organization with the right to repair credit. *See*, Dkt. 23, Page 16, Lines 23-25; Page 17, Lines 1-2 (wherein Defendant stated, "[PCMS is] not a credit repair organization."). These facts demonstrate the knowing and willful impropriety and overreach of Defendant's claim made to Pietro, subjecting Defendant to liability under the FCCPA. *Bacelli*, 729 F. Supp. 2d 1328.

The second way PCMS asserted a right that did not exist was in suggesting it had the right to receive payment *prior* to causing Pietro's credit to be "restored." However, as this Court stated in *FTC v. RCA,*

> The Credit Repair Organizations Act prohibits a credit repair organization from charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer *before* such service is fully performed. 15 U.S.C. § 1679b(b). (Emphasis added).

727 F. Supp. 2d 1320, 1333 (M.D. Fla. 2010). Notwithstanding this prohibition, PCMS represented to Pietro that it would restore his credit after receiving payment on the Debt.

No material facts demonstrating Defendant's liability under the FCCPA are disputed. Defendant sent the Letter to Pietro, and the Letter's plain language violates the FCCPA through the assertion of legal rights that do not exist. Accordingly, summary judgment should be granted

in favor of Plaintiff as to Count III of Plaintiff's Complaint, entitling Plaintiff to the award of $1,000 statutory damages and the recovery of reasonable attorney's fees.

### c. APPLYING THE FOREGOING FACTUAL DISCUSSION TO THE FDCPA, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT

The federal Fair Debt Collection Practices Act was enacted "to eliminate abusive debt collection practices . . . and . . . to protect consumers against debt collection practice abuses." 15 U.S.C. § 1692e. The FDCPA is a remedial statute, "and its provisions are to be liberally construed in favor of the consumer debtor." *Mammen v. Bronson & Migliaccio, LLP*, 715 F.Supp. 2d 1210, 1210-1214 (M.D. Fla. 2009). A single violation of any provision is sufficient to trigger liability. *Id.*

The FDCPA is a strict liability statute. *See Beeders v. Gulf Coast Collection Bureau, Inc.*, 796 F. Supp. 2d 1335, 1337 (M,D. Fla. 2011). "Recognizing that the FDCPA is a strict liability statute, it is unnecessary for the plaintiff to prove that the debt collector's error was unintentional." *Hepson v. J.C. Christensen & Assocs.*, 2008 U.S. Dist. LEXIS 92696, 9-10 (M.D. Fla. Nov. 5, 2008). In fact, § 1692e would be "rendered superfluous if its violation needed to be done knowingly or intentionally." *Id.*

In order to prevail on an FDCPA claim, a plaintiff must show that: "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Fuller v. Becker & Poliakoff, P.A.*, 192 F.Supp 2d 1361 (M.D. Fla. 2002) (quoting *Kaplan v. Assetcare, Inc.*, 88 F.Supp. 2d 1355, 1360-61 (S.D. Fla. 2000)). In this case, Plaintiff's FDCPA claim arises under 15 U.S.C. § 1692e(10), which proscribes the use of false representations and deceptive means in attempting to collect consumer debts.

Applying these elements to the facts in the case at bar, the Defendant's liability under the FDCPA is established: (1) The Defendant attempted to collect a consumer debt from Pietro. *See, supra*, Section II. ¶¶ 2-3; (2) The Defendant is admittedly a debt collector as defined by the FDCPA. *See, supra*, Section II. ¶ 1; and (3) finally, the Defendant violated the FDCPA by using false representation and deceptive means in attempting to collect the Debt from Pietro. 15 U.S.C. § 1692e(10).

The Eleventh Circuit has adopted the "least sophisticated consumer" standard in reviewing alleged violations of the FDCPA. *See Beeders*, 796 F. Supp. 2d at 1338. *See, also, Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985). "The least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Beeders*, 796 F. Supp. 2d at 1338 (quoting *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999)). "Actual confusion is not necessary." *Id.* (quoting *Keen v. Omnibus International*, No. 98 C 3947, 1998 U.S. Dist. LEXIS 12619 (N.D. Ill. August 12, 1998)) (noting that in the context of a collection letter, "the true test remains whether the letter, taken as a whole, would confuse an unsophisticated consumer about his or her rights).

In the present matter, the issue of whether Defendant has violated FDCPA § 1692e(10) hinges upon whether the Letter, taken as a whole and from the point of view of the least sophisticated consumer, falsely and deceptively represented that PCMS could restore Pietro's credit after taking payment on the Debt.

As discussed above, the Letter is inherently false, deceptive, and unlawful. This is especially true when taken as a whole and from the point of view of the "least sophisticated consumer." PCMS entitled its collection letter as "Credit Bureau Notice" and invited Pietro to restore his credit by resolving his outstanding debt. Based on the plain meaning of the Letter, the

least sophisticated consumer would have been deceived by PCMS's false representation that it had the ability to "restore" his or her credit to its previous place by accepting a payment. Such a statement would lead a least sophisticated to believe his or her credit would be restored to its position prior to adverse reporting. Defendant sent the Letter in an attempt to induce payment with the promise of "restoring" the credit of anyone who makes such a payment. This promise is overtly false in light of Defendant's admissions that it cannot restore a payor's credit and is unable even to measure or predict the effect on a payor's credit.

PCMS violated the FDCPA by its sending of the Letter which contained false and deceptive representations when viewed in light of the least sophisticated debtor. PCMS further falsely and deceptively asserted its right to restore Pietro's credit after receiving payment on the Debt. No material facts demonstrating Defendant's liability under the FDCPA are disputed. Defendant sent the Letter to Pietro, and the Letter's plain language violates the FDCPA. Accordingly, summary judgment should be granted in favor of Plaintiff as to Count I of Plaintiff's Complaint, entitling Plaintiff to the award of $1,000 statutory damages and the recovery of reasonable attorney's fees.

**d.  APPLYING THE FOREGOING FACTUAL DISCUSSION, PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO COUNT IV OF THE COMPLAINT**

With respect to the three claims outlined above, injunctive relief is only expressly authorized by the FCCPA. *See* Fla. Stat. § 559.77. As discussed above, Defendant violated the FCCPA by sending the Letter to Pietro. Unless the Defendant is enjoined from falsely and deceptively representing that it can restore credit, continuing injury will result. The requested injunction is reasonably necessary to protect legal rights and will have no adverse effect on the

public welfare. Accordingly, Plaintiff is entitled to declaratory and injunctive relief declaring the letter to be unlawful and enjoining the Defendant from any further use of the Letter.

**B.**     <u>PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS TO EACH OF DEFENDANT'S AFFIRMATIVE DEFENSES CLAIMS</u>

PCMS's affirmative defenses are legally insufficient and invalid as a matter of law. PCMS failed to allege any facts in support of its purported defenses, and instead recited mere conclusions of law that failed to substantiate the deficiencies in its pleading. Further, in light of the undisputed facts supporting Plaintiff's Motion for Summary Judgment, judgment should be granted in favor of Plaintiff as to each of Defendant's Affirmative Defenses.

**1.**     <u>SUMMARY JUDGMENT SHOULD BE GRANTED AS TO DEFENDANT'S FIRST AFFIRMATIVE DEFENSE</u>

An affirmative defense is defined as "a defendant's assertion raising new facts and argument that, if true, will defeat the Plaintiff's…claim even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003). "A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

In the present matter, PCMS's First Affirmative Defense asserts that "Plaintiff's Complaint fails to state a cause of action upon which relief may be granted." *See Answer*, Dkt. No. 7, 14. This is an insufficient affirmative defense as it denies Plaintiff's allegations rather than raises new facts and arguments. *See Premium Leisure, LLC v. Gulf Coast Spa Mfrs, Inc.*, Case No. 8:08-cv-1048, 2008 U.S. Dist. LEXIS 64098, *9 (M.D. Fla. 2008) (holding that defense of failure to state a claim "is a denial of [plaintiff's] claim, rather than an affirmative defense"). Plaintiff has adequately proven its *prima facie* case, and no facts of record suggest the

validity of the First Affirmative Defense. *See* Sections 1V. A. 2. a. and d., *supra*. Thus, Plaintiff should be awarded summary judgment as to Defendant's First Affirmative Defense.

### 2. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO DEFENDANT'S SECOND AFFIRMATIVE DEFENSE

PCMS's Second Affirmative Defense asserts that "Plaintiff's claims are barred by the doctrine of judicial estoppel." *See Answer and Affirmative Defenses*, Dkt. No. 7,14. PCMS's claim of judicial estoppel must necessarily arise from supported facts and claims alleged in the defense. However, PCMS has wholly failed to allege any facts in support of this conclusory allegation. Therefore, PCMS's bare-bones conclusion simply does not provide enough factual allegations to put Plaintiff on notice of the defense as to why Plaintiff should be judicially estopped from recovery. *See Curry v. High Springs Family Practice Clinic & Diagnosis Ctr., Inc.*, 2008 U.S. Dist. LEXIS 99462 at 10 (N.D. Fla. 2008). Because there are no facts of record supporting the applicability of judicial estoppel, Plaintiff should be granted summary judgment as to PCMS's Second Affirmative Defense

### 3. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO DEFENDANT'S THIRD AFFIRMATIVE DEFENSE

PCMS's Third Affirmative Defense asserts that "Plaintiff's claim under the FDCPA is barred by the applicable statute of limitations." This Court has already denied PCMS's Motion to Dismiss the case on this issue, rendering this issue moot. *See, supra, Section I.* at ¶¶ 7-10; *Order Denying Defendant's Motion to Dismiss*, Dkt. No. 13. As set forth above, this cause of action was filed on October 6, 2011, which was less than two years from March 15, 2011, the date Pietro's bankruptcy petition was filed. This filing was timely pursuant to 11 U.S.C. § 108(a)(2). These facts are undisputed. Accordingly, Plaintiff should be granted summary judgment as to Defendant's Third Affirmative Defense.

## 4. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO DEFENDANT'S FOURTH AFFIRMATIVE DEFENSE

PCMS's Fourth Affirmative Defense asserts that "[s]hould any violation be found, the factual basis for such violation will show that it was a result of a *bonafide* error, in spite of Defendant's implementation and maintenance of procedures which have been reasonably adapted to avoid any such error(s)." *See Answer*, Dkt. No. 7, 14.

It should be noted that this Affirmative Defense is specific to Counts I and III of Plaintiff's Complaint.[3] All of Plaintiff's claims arise from Defendant's intentional use of the Letter when attempting to collect the Debt from Pietro. The fact that the Letter was intentionally sent to Pietro is not disputed. *See Complaint*, Dkt. 1, ¶14; *Answer*, Dkt. 7, 14, ¶14. To the extent Defendant was mistaken in its judgment and belief that the Letter did not violate applicable laws, such a defense fails as a matter of law. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 US 1605, 1624 (2010) (wherein the Supreme Court stated "the *bona fide* error defense in § 1692k(c) [of the FDCPA] does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of the statute.") Instead, the *bona fide* error defense generally protects against clerical and factual errors and not misinterpretations of law. *Id.* Consequently, Plaintiff should be granted summary judgment as to PCMS's Fourth Affirmative Defense as a matter of law.

## 5. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO DEFENDANT'S FIFTH AFFIRMATIVE DEFENSE

PCMS's Fifth Affirmative Defense asserts that "[t]he instant action was brought by Plaintiffs in bad faith and for the purpose of harassment and thus entitles Defendant to an award of attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3)." *See Answer and Affirmative Defenses*,

---

[3] The FDCPA and FCCPA provide exceptions for the *bona fide* errors. *See* 15 U.S.C. § 1692k(c); Fla. Stat. § 559.77.

Dkt. No. 7, 14. This defense is presumably directed to Count I only, as the FDCPA contains the statute referenced in this defense. As explained in Section IV. B. 2. above, an Affirmative Defense is "a defendant's assertion raising new facts and argument that, if true, will defeat the Plaintiff's…claim even if all allegations in the complaint are true. *Saks*, 316 F.3d at 350.

Rather than an Affirmative Defense, this defense is in the nature of a claim for attorney's fees, contingent on Defendant ultimately prevailing in this case, and subsequently proving to this Court that this action was brought in bad faith and for the purpose of harassing Defendant. However, as explained in Section IV. A., Plaintiff is entitled to judgment on its case-in-chief. Assuming, *arguendo,* this Court determines that Plaintiff is not entitled to summary judgment, this action was brought for the purpose of invoking the protections of the laws cited herein and not for the purpose of harassment. In any event, Defendant's Fifth Affirmative Defense is not legally sufficient. As such, Plaintiff should be granted summary judgment as to PCMS's Fifth Affirmative Defense.

### 6. SUMMARY JUDGMENT SHOULD BE GRANTED AS TO DEFENDANT'S SIXTH AFFIRMATIVE DEFENSE

PCMS's Sixth Affirmative Defense asserts that "Plaintiff has not suffered any actual damages." *See Answer and Affirmative Defenses*, Dkt. No. 7, 14. Assuming *arguendo* that PCMS asserts this defense as a defect in Plaintiff's *prima facie* case, this averment is insufficient as a matter of law. "A defense which points out a defect in the plaintiff's *prima facie* case is not an affirmative defense." *See In re Rawson.*, 846 F.2d at 1349.

Moreover, the suffering of actual damages is not a necessary element in a cause of action under the FDCPA, FCCPA, or CROA. To prevail under these laws, Plaintiff need only demonstrate that the statutes were violated. *See North Star Capital Acquisitions, LLC v. Krig*, 611 F.Supp. 2d 1324, 1337(M.D. Fla. 2009) (stating that both the FCCPA and the FDCPA

provide for *both* statutory and actual damages) (emphasis added); 15 U.S.C. § 1692k(a)(2)(A); Fla. Stat. § 559.77(2). While the CROA does not provide for an award of statutory damages, it does provide for the award of attorney's fees to a prevailing Plaintiff. *See, e.g., Hill v. Equifax Consumer Servs.*, 237 F.R.D. 491, 507, 2006 U.S. Dist. LEXIS 60182 (N.D. Ga. 2006) (arguing that damages under the CROA are functionally equivalent to statutory penalties and noting that the statute allows for punitive damages as well); 15 U.S.C. § 1679g(a). As such, Plaintiff should be granted summary judgment as to PCMS's Sixth Affirmative Defense.

## V. <u>CONCLUSION</u>

The Defendant sought to collect a consumer debt from Pietro by its sending of the Letter, which falsely and deceptively offered to restore his credit upon payment. The letter was inherently false and misleading. Plaintiff is entitled to judgment under the FDCPA, CROA, and FCCPA. Moreover, Plaintiff is entitled to a declaration that the letter is unlawful. Finally, Defendant should be enjoined from further use of the Letter.

For the foregoing reasons, Plaintiff respectfully requests judgment providing the following:

A. The entry of summary judgment as to liability against Defendant for violations of: 15 U.S.C. § 1692e(10); 15 U.S.C. § 1679b(a)(3); and Fla. Stat. § 559.72(9);

B. The entry of declaratory judgment that Defendant's conduct violated § 559.72(9) the FCCPA and the entry of injunctive relief enjoining Defendant from further use of the Letter;

C. As award of $1,000 statutory damages against Defendant pursuant to 15 U.S.C. § 1692k;

D. An award of $1,000 statutory damages against Defendant pursuant to Fla. Stat. § 559.77;

E. The entry of judgment against Defendant and an award of attorney's fees pursuant to § 1679g of the CROA;

F. The award of costs and reasonable attorney's fees against Defendant pursuant to 15 U.S.C. § 1692k and Fla. Stat. § 559.77; and

G. For such other and further relief as is just.

Respectfully Submitted,

**LEAVENGOOD & NASH**

*/s/ Ian R. Leavengood*
**Ian R. Leavengood, Esq., FBN 0010167**
**LEAD TRIAL COUNSEL**
**Christopher C. Nash, Esq., FBN 135046**
**Aaron M. Swift, Esq. FBN 93088**
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
ileavengood@leavenlaw.com
cnash@leavenlaw.com
aswift@leavenlaw.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing *Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law* has been furnished electronically this 7th day of September 2012 to:

J. Robert McCormack
Counsel for Defendant
Lewis Brisbois Bisgaard & Smith, LLP
3812 Coconut Palm Drive, Suite 200
Tampa, FL 33619

*/s/ Ian R. Leavengood*
Attorney