UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RICHARD M. DAUVAL, Trustee**
**for the Estate of Joseph Pietro,**

    **Plaintiff,**

vs.                                      Case No.: 8:11-CV-2269-T-27TGW

**PREFERRED COLLECTION AND**
**MANAGEMENT SERVICES, INC.,**

    **Defendant.**
_____/

## ORDER

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Dkt. 26), Defendant's response in opposition (Dkt. 28), and Plaintiff's reply (Dkt. 32); and Defendant's Motion for Summary Judgment (Dkt. 24), to which Plaintiff has responded. (Dkt. 27.) Upon consideration, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED *in part* on Counts II, III, and IV, and DENIED *in part* on Count I.

**I.**    **FACTUAL BACKGROUND**

Joseph Pietro ("Pietro") filed a Chapter 7 Bankruptcy petition on March 15, 2011. The Plaintiff here, Richard M. Dauval ("Plaintiff"), was appointed by the Bankruptcy Court as Trustee to the Bankruptcy Estate. Plaintiff brought this lawsuit against Preferred Collection and Management Services, Inc. ("Preferred"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*, and the Florida Consumer Collections Practices Act ("FCCPA"), § 559.55 *et seq.*,

Florida Statutes. The Complaint also seeks equitable relief for any violations.

On May 18, 2010, Pietro received a collection letter from Preferred, which read:

### CREDIT BUREAU NOTICE

> A review of our collection records indicates that your account has been reported to credit reporting agencies. Restoring your valuable credit is certainly important to you.
>
> Act today by contacting our office to resolve this outstanding debt and restore your credit by having us inform the credit reporting agencies of your positive action. I trust you will take advantage of this invitation and immediately contact our office.

(Dkt. 1-2.) The letter also referenced a $350.00 debt owed by Pietro (*Id.*) This was the only communication from Preferred to Pietro, and Pietro never responded to the letter. (Dkt. 24 at 3.)

The parties agree that Preferred is a "debt collector" as defined in the FDCPA and the FCCPA (Dkt. 26 at 3), and that Preferred attempted to collect a consumer debt from Pietro by using the letter quoted above. (Dkt. 23 at 75:6-9); *see* 15 U.S.C. § 1692a(6); Fla. Stat. § 559.55. Preferred has conceded that it has no understanding of Pietro's credit rating (Dkt. 23 at 78:6-9) and no ability to "quantify" the impact of a payment on Pietro's credit rating. (*Id.* at 80:5-11.)

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen*

*v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party who must go beyond the pleadings to show that specific facts exist that raise a genuine dispute of material fact for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cnty. Dep't of Health*, 695 F.3d 1183, 1185 (11th Cir. 2012). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cnty. v. Purcell Corp.*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable." *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine dispute over a material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328,

1330 (11th Cir. 1988).

## III. DISCUSSION

### A. Count I - Violation of 15 U.S.C. § 1692e(10) - FDCPA

Count I alleges that Preferred violated § 1692e(10) of the FDCPA by using false representations and deceptive means to collect the debt from Pietro. (Dkt. 1 ¶ 20.) Specifically, Plaintiff alleges that Preferred's collection letter deceived Pietro into falsely believing that his credit record, history, rating, or report would be restored if he made payment on the debt. (*Id.* ¶¶ 11, 21.) Preferred characterizes Plaintiff's reading of the letter as "bizarre" and "idiosyncratic," and interprets the letter as a promise to "inform the credit reporting agencies of [Pietro's] positive action" in paying the outstanding debt, not as a promise to restore Pietro's credit. (Dkt. 24 at 6.) Plaintiff replies that the "least-sophisticated consumer" could reasonably believe that the letter promises to restore the debtor's credit upon payment, which Preferred had no intention or ability to do. (Dkt. 27 at 6; Dkt. 26, at 8, 10.)

The FDCPA prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). To prevail on the FDCPA claim, Plaintiff must show that "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Fuller v. Becker & Poliakoff, P.A.*, 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002).

There is no dispute that Pietro was the object of collection activity arising from consumer debt, and that Preferred is a "debt collector" as defined by the FDCPA. The dispositive issue is

whether Preferred has engaged in some act or omission prohibited by the FDCPA–specifically, whether Preferred has used "false representation or deceptive means" to attempt to collect the debt from Pietro.

Plaintiff's § 1692e claim is viewed objectively through the lens of the "least-sophisticated consumer." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200-01 (11th Cir. 2010). The least-sophisticated consumer is presumed "to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). This standard "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." *LeBlanc*, 601 F.3d at 1194 (quoting *U.S. v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

In *LeBlanc*, the Eleventh Circuit adopted and applied the least-sophisticated consumer test to determine whether a debt collector's letter violated § 1692e, or merely conveyed useful information to the debtor. *See id.* at 1195. In the summary judgment context, the court imposed on Plaintiff the burden of proving that "no reasonable jury, viewing the letter through the eyes of a 'least-sophisticated consumer,' and making all reasonable inferences in [the defendant's] favor, could find that the letter was merely informative as opposed to threatening." *Id.* When a reasonable jury could draw an inference in favor of either party, summary judgment was not appropriate. *Id.* at 1197.

Applying this analysis, a reasonable jury could draw an inference in favor of either Plaintiff or Preferred. Therefore, a genuine dispute of material fact exists as to whether the letter is "deceptive" under § 1692e(10). On the one hand, a reasonable jury, applying the least-sophisticated consumer standard, could read the letter as inferring that Preferred would merely

report the debtor's positive action to the credit reporting agencies upon payment, with no promise of improving his credit rating. If this inference is drawn, the letter is not deceptive. On the other hand, a reasonable jury could conclude that a least-sophisticated consumer would infer that payment would result in a "restor[ation]" of the debtor's credit rating. Drawing this inference, the letter would be deceptive because Preferred has admitted that it has no control over the value of a debtor's credit rating. (Dkt. 23 at 18:3-5.) Neither interpretation is bizarre or idiosyncratic.

Here, as in *LeBlanc*, summary judgment is not appropriate because the parties "reasonably disagree on the proper inferences that can be drawn from the debt collector's letter." *LeBlanc*, 601 F.3d at 1197 (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1176 (11th Cir. 1985)). The cross-motions for summary judgment on Count I are, therefore, denied.

**B.   Count II - Violation of 15 U.S.C. § 1679b(a)(3) - CROA**

Count II alleges that Preferred violated § 1679b(a)(3) of the Credit Repair Organizations Act ("CROA"). Both parties have moved for summary judgment. Determining entitlement to summary judgment involves a two-fold analysis. First, it must be determined whether Preferred is a "credit repair organization" as defined in § 1679a(3). If Preferred is a "credit repair organization," it must then be determined whether Preferred violated § 1679b(a)(3).

The Credit Repair Organizations Act (CROA) was promulgated "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b). To accomplish this goal, CROA prohibits, among other things, any "person" from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." *Id.* § 1679b(a)(3).

"Credit repair organization,"[1] is defined in § 1679a(3):

> The term "credit repair organization"--
>
> **(A)** means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of–
>
> > **(i)** improving any consumer's credit record, credit history, or credit rating; or
> >
> > **(ii)** providing advice or assistance to any consumer with regard to any activity or service described in clause (i); . . . .

*Id.* To establish that Preferred operated as a credit repair organization, Plaintiff must show that Preferred "'(1) used any instrumentality of interstate commerce, or the mails to (2) sell, provide, or perform (or represent that they could do so) (3) in return for valuable consideration (4) services or advice about services (5) for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating.'" *RCA Credit Servs.*, 727 F. Supp. 2d at 1332 (quoting *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 511 (N.D. Ga. 2006)).

The plain language of the collection letter demonstrates that Preferred used the mail to represent that it could provide services for the express or implied purpose of improving Pietro's credit rating. The critical issue, therefore, is whether Preferred met the fourth element of a credit repair organization by providing–*in return for valuable consideration*–services for the purpose of

---

[1] Although § 1679b(a) prohibits any "person" from making untrue or misleading representations, this Court and others have previously held that, given Congress' purpose in enacting CROA, "only a credit repair organization or a person associated with a credit repair organization can violate this provision." *Fed. Trade Comm'n v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1334 n.21 (M.D. Fla. 2010) (citing various cases for the same proposition).

improving Pietro's credit rating.[2]

Preferred is not a "credit repair organization," as defined in § 1679a. The evidence demonstrates that there is no dispute that Preferred sought only to collect the $350.00 outstanding debt from Pietro, and never offered to perform any services related to Pietro's credit record, credit history, or credit rating in exchange for compensation other than the debt owed. Indeed, the Complaint alleges simply that "[a]t all times herein, the Defendant attempted to collect a debt." (Dkt. 1 ¶ 8.)

The language in Preferred's letter is almost identical to the collection letter in *Oslan v. Collection Bureau of Hudson Valley*, where the defendant offered to "restore" the debtor's credit in exchange for payment on a debt. No. Civ.A 01-2173, 2001 WL 34355648, at *1 (E.D. Pa. Dec. 13, 2001). Holding that the defendant was not a "credit repair organization," the *Oslan* court concluded that "[c]ollection agencies, insofar as they do not seek compensation for credit repair services, do not engage in the type of conduct which Congress sought to regulate in enacting the CROA." 2001 WL 34355648, at *1. This Court agrees.

Because it is not a "credit repair organization," Preferred is entitled to summary judgment on Count II.

### C.  Count III - Violation of Fla. Stat. § 559.72(9) - FCCPA

Count III alleges that Preferred violated § 559.72(9), Florida Statutes ("FCCPA"), by implying that it could and would restore Pietro's credit upon payment of the debt. Because Plaintiff predicates his entire FCCPA claim on the allegations supporting the failed CROA claim,

---

[2]Plaintiff argues that this question is controlled by *Bigalke v. Creditrust Corp.*, 162 F. Supp. 2d 996 (N.D. Ill. 2001). *Bigalke* was decided at the motion to dismiss stage, *id.* at 997, rather than at summary judgment, and is therefore inapposite.

Preferred is entitled to summary judgment on Count III.

The FCCPA prohibits any person from claiming, attempting, or threatening to enforce a debt when the person knows that the debt is not legitimate, or asserting the existence of some other legal right when the person knows that the right does not exist. Fla. Stat. § 559.72(9). When assessing whether the defendant has asserted the existence of "some other legal right" that does not exist, one "must refer to other statutes that establish the legitimacy of a debt and define legal rights." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1126 (11th Cir. 2004) (citing *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000)).

Although the Complaint does not specify a legal right, Plaintiff's Motion for Summary Judgment clarifies that the FCCPA claim rests entirely upon the allegations supporting his CROA claim. (Dkt. 26, at 14 ("For that reason, the court should refer to the CROA in determining whether [Preferred] asserted a legal right that doesn't exist.").) Since Preferred is entitled to summary judgment on the CROA claim, Plaintiff cannot establish the requisite statutory violation to sustain his claim under the FCCPA. *See Greene v. Douglas, Knight & Assocs., Inc. (In re Cheaves)*, 439 B.R. 220, 224 (Bankr. M.D. Fla. 2010) (granting summary judgment to the defendant on an FCCPA claim resting entirely on the allegations supporting an FDCPA claim, on which defendant was granted summary judgment). It follows that Preferred's collection letter does not assert "the existence of some other legal right when such person knows that the right does not exist" in violation of § 559.72(9). Preferred is therefore entitled to summary judgment on Count III.

### D. Count IV - Declaratory and Injunctive Relief

In Count IV, Plaintiff seeks declaratory relief that Preferred violated the FDCPA, CROA,

and FCCPA, and injunctive relief prohibiting Preferred from "continuing to falsely represent to Plaintiff that Defendant can restore Plaintiff's credit." (Dkt. 1 ¶ 34.)

Since Preferred is entitled to summary judgment on the CROA and FCCPA claims, Preferred is likewise entitled to summary judgment on the declaratory and injunctive relief sought in relation to those claims. Moreover, equitable relief is not available to an individual under the FDCPA. *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982); *see also Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000) ("[C]ourts uniformly hold that the FDCPA does not authorize equitable relief."). Preferred is therefore entitled to summary judgment on Count IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. 26) is DENIED. Preferred's Motion for Summary Judgment (Dkt. 24) is GRANTED *in part* on Counts II, III, and IV, and DENIED *in part* on Count I.

**DONE AND ORDERED** this 26th day of November, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record